UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY GORECKI,

Petitioner,

Case Number 2:13-cv-14788
Honorable Victoria A. Roberts

WILLIE SMITH,

Respondent.
_______________________________________/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Jeffrey Gorecki's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Macomb Circuit Court of assault with intent to commit murder, MICH. COMP. LAWS. § 750.83, first-degree home invasion, MICH. COMP. LAWS. § 750.110a(2), felonious assault, MICH. COMP. LAWS. § 750.82, interfering with a crime report, MICH. COMP. LAWS. § 750.483a(2)(a), and unlawfully driving away an automobile (UDAA), MICH. COMP. LAWS. § 750.413. He was sentenced as a third-time habitual felony offender to prison terms of 31-1/4 to 50 years for the assault with intent to commit murder conviction, 10 to 20 years for the home invasion conviction, 2 to 4 years for the felonious assault conviction, and jail terms of 211 days each for the interfering with a crime report and UDAA convictions.

The petition raises three claims: 1) Petitioner was denied the effective assistance of counsel at trial, 2) the trial court was biased against Petitioner, and 3) Petitioner's appellate counsel was ineffective for failing to raise his first two claims during his direct appeal. Respondent asserts that review of Petitioner's claims is barred by his state court procedural default.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be

denied. The Court also denies Petitioner a certificate of appealability, and grants him permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Shortly after midnight on March 26, 2008, the victim, Lisa Lulgjuraj, ran out of her condominium screaming and calling neighbors for help. A teenaged girl from next door found Lulgjuraj bleeding from the head. She was taken to a hospital; it was determined that she had lacerations and depressed skull fractures on both sides of her head. At the time of trial she still suffered neurological effects from her head injuries and had trouble finding words and expressing herself. Lulgjuraj accused her ex-boyfriend, Petitioner, of beating her. Petitioner admitted he hit her with a wooden statue, but he claimed he did so in self-defense when Luljuraj attacked him with a knife.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's UDAA conviction arises from evidence that he refused to return a Ford Fusion leased by his girlfriend (hereafter the "victim") after their relationship ended in January 2008, and she demanded that he move out of the condominium that they shared. On March 17, 2008, after defendant had refused to return the vehicle, the victim reported to the police that the vehicle had been stolen.
>
> The victim also changed the door locks and code for the garage door opener at the condominium. According to the victim, she agreed to meet with defendant at her condominium on March 25, 2008, provided that he would arrive by 8:00 p.m. When he failed to appear by the designated time, she informed him by telephone not to come over. The victim later fell asleep on a couch and woke up to find defendant standing over her. According to the victim, defendant thereafter struck her on the head with a statue that she kept in an upstairs bedroom. He also threatened to kill her and said that no one else could have her. Defendant was later arrested when the police searched a condominium located across the street. The victim's leased vehicle and a knife from the victim's condominium were found in the garage. Defendant

> claimed self-defense at trial. He conceded that he struck the victim several times on the head, but claimed that he grabbed the statue from a coffee table and reacted each time to the victim lunging at him with a knife. Defendant also claimed that the victim consented to his entry into the condominium, and he also asserted a right or belief that he could enter it without her permission.

*People v. Gorecki*, No. 288902, 2010 WL 1872935, at *1 (Mich. Ct. App. May 11, 2010).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, and he was appointed appellate counsel. Appellate counsel filed a brief on appeal, raising the following claims:

> I. The trial court violated Mr. Gorecki's state and federal right to present a defense in erroneously precluding admissible evidence that supported his claim of self defense.
>
> II. The trial court reversibly erred in allowing a police detective to testify over objection that it was his opinion that the complainant was believable, that Mr. Gorecki was not believable, and the Mr. Gorecki was guilty of the crimes charged.
>
> III. Mr. Gorecki's convictions for both assault with intent murder and felonious assault violate the state and federal Double Jeopardy Clauses where the Legislature did not intend for multiple punishment.
>
> IV. Mr. Gorecki's home invasion conviction violates his state and federal rights to due process as it is not supported by sufficient evidence as a matter of law where he had a legal right to access and be present in the home. Alternatively, Mr. Gorecki is entitled to a new trial where the trial court gave a claim-of-right defense instruction on this charge that did not adequately convey that defense. (Petitioner claimed he had a right to be in the victim's house when the assault occurred, which would negate an element of the home invasion charge: entering without permission. MCL 750.110 a (1)(2).)
>
> V. Mr. Gorecki is entitled to resentencing based on errors in the scoring of the sentencing guidelines.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished opinion. *Gorecki*, 2010 WL 1872935. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court

of Appeals. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Gorecki*, 791 N.W.2d 284 (Mich. 2010) (unpublished table decision).

Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised what now form his three habeas claims. The trial court denied the motion for relief from judgment, holding both that Petitioner had failed to show good cause and actual prejudice to excuse his failure to raise the claims on direct appeal as required by Michigan Court Rule 6.508(D)(3). The Court also discussed each of Petitioner's claims and found that none had merit.

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The Michigan Court of Appeals denied the application for leave to appeal because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Gorecki*, No. 311584 (Mich. Ct. App. May 3, 2013). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but his application was denied under Rule 6.508(D). *People v. Gorecki*, 838 N.W.2d 160 (Mich. 2013) (unpublished table decision).

**II. Standard of Review**

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012). However, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may

rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. Analysis

### A. Procedural Default

None of Petitioner's habeas claims was raised in his direct state court appeal. He raised the claims in his motion for relief from judgment and the appeal that followed its denial. The trial court found, in part, that review of the claims was barred under Michigan Rules of Court 6.508(D)(3) because Petitioner did not demonstrate "good cause" or "actual prejudice" for failing to raise the claims on direct appeal. As a result, Respondent asserts that the claims are procedurally barred from habeas review. See *Akrawi v. Booker*, 572 F.3d 252, 261 (6th Cir. 2009). Respondent is correct.

Nevertheless, while the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).

Here, after a thorough review of the record, the Court determines that Petitioner's claims are without merit, and that the trial court's alternate ruling that the claims lack merit did not involve an unreasonable application of clearly established Supreme Court law. Therefore, the Court need not

address the procedural default issue.

**B. Ineffective Assistance of Trial Counsel**

Petitioner raises multiple allegations of ineffective assistance of counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-688. In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance." *Id*. at 689. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id*. at 689.

Second, the defendant must show that such performance prejudiced his defense. *Id*. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding would have been different but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123.

Pursuant to the section 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id*. This means that, on habeas review of a state-court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id*. at 105 (quotation marks omitted). Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. at 105. In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407, 179 L. Ed. 2d 557 (2011).

**1. Failure to object to police officer's comments on Petitioner's guilt**

Petitioner asserts that his counsel was ineffective for failing to object to the prosecutor's question to Detective Hogan regarding a comment Hogan made to Petitioner during his interrogation. At one point in the interrogation, Hogan told Petitioner that he did not think Petitioner was the type of man who would try to kill his girlfriend. The prosecutor asked Hogan if he really meant that comment, suggesting that it was simply a tactic to gain Petitioner's cooperation. Defense counsel twice objected to the question, but eventually the question was answered.

It is clear from the colloquy that the prosecutor was not attempting to elicit the officer's opinion that Petitioner was guilty, but that the officer was explaining that he told Petitioner that he did not think he was guilty only as an interrogation tactic. In fact, as the prosecutor continued down this line of questions, the trial court stated: "you can testify as to the inconsistencies but not his opinion about truth or lies." Tr. 9/18/08, p. 116.

Later, the prosecutor asked Hogan why he brought a warrant request to the prosecutor's office. Again, defense counsel objected several times to the question on relevancy grounds. Tr. 9/18/08, pp. 126-127. The trial court seemingly allowed the answer to show how the case proceeded to trial.

Accordingly, Petitioner's argument that his defense counsel was ineffective for failing to challenge these questions is belied by the record. Defense counsel posed the correct objection on both occasions. Defense objected on grounds of relevance, and a witness's opinion as to a defendant's guilt or innocence is inadmissible because it is irrelevant. *United States v. Crockett*, 586 F. Supp. 2d 877, 884 (E.D. Mich. 2008). The trial court simply overruled the proper objections. Whether the objections could have been placed more forcefully is not the issue; the objections as posed were not so ineffective so as to fall below the "wide range of reasonable professional

assistance." *Strickland*. at 689. Moreover, the trial court instructed that the witness could not give an opinion on Petitioner's guilt or innocence. Accordingly, this allegation is without merit.

**2. Failure to object to admission of Petitioner's statement to police**

Petitioner next asserts that his counsel was ineffective for failing to move to suppress his statements to police on the grounds that Petitioner requested counsel prior to interrogation. This claim is also belied by the record. Defense counsel filed a motion to suppress Petitioner's statements, and a hearing was held on the motion. Tr. 7/14/2008. Counsel played a videotape of the interrogation for the court at the hearing, and then examined the interrogating officer. After the hearing, the trial court made a specific finding of fact that "[i]t was quite clear to me, there was never an enunciation that he wanted an attorney." Id., at 67. This factual finding is entitled to the presumption of correctness, and Petitioner has not offered clear and convincing evidence to overcome the presumption. 28 U.S.C. §2254(e)(1). There is no indication that Petitioner made an unequivocal request for counsel. The only fact supporting Petitioner's claim is that he refused to sign the waiver of right form–a circumstance that would not have resulted in the suppression of his statement. See *Davie v. Mitchell*, 547 F.3d 297, 303-308 (6th Cir. 2008). Though defense counsel primarily argued that Petitioner's statement was involuntary, the trial court rejected the factual basis for the claim Petitioner asserts his counsel should have raised. Petitioner has not shown that his counsel was ineffective.

**3. Failure to present self defense evidence**

The victim's trial testimony indicated that Petitioner came downstairs holding a box of glasses and that the statue he assaulted her with was behind his back, perhaps hidden in his pants. Defense counsel wished to demonstrate that the statue would not fit in the back of a waistband, but

the court indicated it would not allow defense counsel to demonstrate due to his smaller stature. Defense counsel elected not to have Petitioner handle the statue for the jury.

This was clearly a matter of sound trial strategy. Defense counsel wisely stated he had "no intention of showing – even putting – anything that could be constructed as a weapon near this Defendant. After all, that would just give cannon fodder for the prosecution." Tr. 9/24/08, pp. 100-101.

This claim amounts to a classic case of second-guessing an on the spot tactical decision by defense counsel to avoid causing apprehension in the jury if it viewed Petitioner handling the alleged crime weapon. Counsel's decision to forgo the demonstration rested within the "wide range of reasonable professional assistance." *Strickland*. at 689. The allegation is without merit.

**4. Failure to object to expert testimony**

Defense counsel attempted to elicit testimony from Detective Hogan that the victim's blood on the knife must have meant that she had come into contact with it. On re-direct examination, Hogan testified how her blood could have been found on the knife even if she never held it:

> [A] defendant that says that he is hugging and holding a woman on the stairs, holding her, kissing her. Someone that is just loaded with blood, who had critical injuries. Matter of fact, blood is actually found on the clothing he wore. That blood very easily, and in my opinion probably, was transferred from [the victim] to [Petitioner] to the knife.

Tr. 9/19/08, pp. 75-76.

Petitioner claims that this testimony amounted to inadmissible expert opinion testimony under Michigan Rule of Evidence 702. In rejecting this claim, the state trial court found that the testimony was properly admitted as lay opinion testimony. Order Denying Motion for Relief From Judgment, p. 5; see MICH R. EVID. 701. A finding that testimony is admissible under state

evidentiary law is not reviewable by this court. See generally *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Because the evidence was admissible as a matter of state law, counsel cannot have been ineffective for failing to make a meritless objection. *Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 654 (E.D. Mich. 2002).

**5. Failure to impeach victim with prior inconsistent statement**

Petitioner claims that his counsel should have impeached the victim with various inconsistent statements she made. He notes that the victim told police that Petitioner told her that he was going to kill her and then kill himself on the night of the assault. The victim later told police that she was not sure if Petitioner made verbal assaults during the assault. At trial, the victim testified that Petitioner told her he was going to kill her so no one else could have her, and that he was going to kill himself. Petitioner also asserts that the victim told officers and friends that "her boyfriend Jeff" assaulted her, but at trial she testified that she had already broken up with Petitioner. Finally, Petitioner points to discrepancies in the victim's account of where Petitioner picked up the statue and whether he had it in his pants, and where exactly in the house he hit her.

The Court reviewed defense counsel's cross examination of the victim. T 9/12/08, pp. 11-116; T 9/16/8, pp. 17-77. The cross examination was thorough and attacked the victim's account of her relationship with Petitioner and the assault. Defense counsel sought to establish a mutually hostile dating environment months prior to the assault to support Petitioner's claim of self-defense. Defense counsel repeatedly referred to the victim's statements to the police and her preliminary examination testimony. He challenged the victim on the details of her account of the assault. The cross examination at times was so probing that the victim stated she could not do it anymore and required numerous breaks. "Where, as here, trial counsel conducts a thorough and meaningful

cross-examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of an ineffective assistance of counsel claim." *Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. February 8, 2002); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 608 (E.D. Mich. June 18, 2001), quoting Rich v. Curtis, 2000 WL 1772628, at *5 (E.D. Mich. October 24, 2000). This claim is without merit.

**6. Failure to submit lab report**

Petitioner's next allegation of ineffective assistance of counsel asserts that his trial attorney failed to offer evidence that hairs found on an ashtray in the victim's apartment did not come from her. Petitioner admitted to striking the victim several times with the statue, but he denied that he struck her with any other object. Police witnesses and the victim suggested that Petitioner may also have hit her with an ashtray or a glass. Blood and hair were found on the ashtray, but a police lab report indicated that the hair did not belong to the victim. Petitioner asserts that this evidence would have supported his self defense claim because it would have shown he did not use multiple weapons.

The trial court rejected that claim. It found that it was "irrelevant to the issue of whether defendant struck the victim with these objects. Even if defendant struck the victim with these objects, it does not follow that any hair from the victim would necessarily adhere to these objects." Opinion Denying Motion for Relief From Judgment, p. 5. This determination was not unreasonable. The victim suffered a fractured skull on both sides of her head. She could not remember with any detail exactly what Petitioner struck her with other than the statue. She was still suffering neurological symptoms at the time of trial. She suggested that she may have been struck with the ashtray because she felt that at some point she was struck with something made of glass. The lab

report at issue would not have conclusively demonstrated that the victim was not hit with the ashtray – it would have only shown that someone else's hair was found in it. In any event, it is not the type of evidence that would have created a reasonable likelihood that the result of Petitioner's trial would have been different. The claim was therefore reasonably rejected by the trial court.

**7. Failure to object to prosecutorial misconduct**

Petitioner argues that counsel was ineffective for failing to object to prosecutorial misconduct during jury selection and closing argument. Petitioner asserts that the prosecutor unfairly labeled the complainant as the "victim" during jury selection. Next, Petitioner asserts that the prosecutor gave inconsistent accounts of the time frame following the assault to account for statements defense counsel made during his closing argument.

By repeatedly referring to the complainant as a "victim," Petitioner says the prosecutor unfairly invoked sympathy for her. But, in rejecting a similar claim, the Sixth Circuit noted that "[t]he U.S. Supreme Court has held that here is no per se bar to the introduction of victim impact evidence and argument," even in the context of a non-capital case. *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000) (citing *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The rejection of the claim by the trial court therefore was not contrary to, nor did it unreasonably apply, Supreme Court precedent. See *Millender v. Adams*, 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002). Counsel was not ineffective for failing to make a meritless objection.

Next, Petitioners says the evidence regarding his mental state around the time of his arrest was vague. Petitioner testified that he was "out of it" when he was arrested at 4:10 a.m. The victim, on the other hand, said Petitioner did not appear to be drunk at the time of the assault. Petitioner complains that at points the prosecutor attempted to describe a longer period of time between the

assault and the arrest to explain the lack of blood on Petitioner, and that at other points suggested a shorter period of time.

In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-1356 (6th Cir. 1993). Here, the trial was long, the statements complained of were brief and isolated, and the evidence was strong. Even assuming the prosecutor's statements were improper, it is not reasonable to think that an objection by defense counsel would have made any difference in the outcome of the trial. The claim was reasonably rejected by the trial court.

**8. Failure to make an adequate closing argument**

Petitioner claims that defense counsel was ineffective during closing argument. He points to several deficiencies, including the failure to assert that if Petitioner possessed the knife the entire time as theorized by the prosecution, then surely he would simply have stabbed the victim to death if he intended to murder her. Petitioner points to other arguments that defense counsel made or could have made better.

The Court reviewed the closing argument. Defense counsel ably attacked various weaknesses in the prosecution's case, including the lack of explanation for the blood on the knife, reasons not to believe the police testimony, discrepancies in the victim's story, the victim's abuse and controlling behavior over the course of the relationship, and Petitioner's candor when he took the witness stand.

Given the broad range of reasonably competent assistance recognized by the *Strickland* standard, it was not objectively unreasonable for the trial court to reject this claim on the merits. It must be recalled that "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123. The claim is without merit.

**9. Prolonging trial**

Petitioner claims that counsel inexplicably prolonged the trial and acted "in a bizarre and confusing manner." This assertion is too vague to merit detailed analysis. The Court notes from the record that defense counsel often repeated or rephrased questions for witnesses. This is not particularly unusual nor does it constitute deficient performance. During the jury selection process, the trial court made comments about defense counsel's conduct, but it appears that counsel took his time to attempt to establish a rapport with the potential jurors; this appeared to annoy the trial court in its attempt to move the proceedings along. Petitioner also complains about his counsel's aggressive and lengthy cross examination of the victim and others. The argument is ironic; Petitioner also complains that his counsel missed opportunities to impeach the victim with prior inconsistent statements. Again, a review of the cross examination reveals a thorough and effective attempt to challenge the victim's credibility, rather than deficient performance.

Petitioner points to nothing in the record about counsel's style that constitutes objectively deficient performance. And, he has not demonstrated that a more stream-lined style would have altered the outcome. The claim was reasonably rejected by the trial court.

**10. Failure to object to judicial misconduct**

Petitioner asserts that his counsel was ineffective for failing to object to misconduct and bias

of the trial court. Because, as discussed below, the trial court did not commit misconduct and was not biased, Petitioner's counsel was not ineffective for failing to object.

**11. Cumulative error**

Finally, Petitioner asserts that cumulative errors committed by counsel resulted in prejudice. On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005)), cert. denied sub nom *Sheppard v. Robinson*, __ U.S. __, 132 S.Ct. 2751, 183 L. Ed. 2d 623 (2012). Therefore, Petitioner is not entitled to relief on this claim.

**C. Judicial Bias**

Petitioner asserts that the trial judge was biased against him. In support, he says that the trial judge interrupted defense counsel on at least fifty times during trial, but rarely interrupted the prosecutor. Specifically, Petitioner points to instances during the cross examination of the victim when the trial court interrupted where it appeared the witness was confused about the question. Petitioner asserts that the victim was not confused, but that she was being evasive and the trial court assisted her with its interruptions.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. See *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Trial judges have wide latitude in conducting trials, but must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that they believe the defendant is guilty. See *Brown v. Palmer*, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

The Court's review of the record shows that the court tried to control proceedings in which it was faced with an aggressive and zealous defense attorney. If anything, the complained of passages reinforce the Court's conclusion that petitioner's trial attorney vigorously and ably represented petitioner and presented his defense as forcefully as possible.

The Supreme Court ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune." *Id*. That was the case here. The trial court's conduct, at most, amounted to an expression of impatience; and it properly rejected Petitioner's judicial bias claim; Petitioner is not entitled to habeas relief.

**D. Ineffective Assistance of Appellate Counsel**

Finally, Petitioner asserts that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims during Petitioner's direct appeal. Petitioner does not assert this as an independent claim; rather, he argues that appellate counsel's ineffectiveness constitutes cause to excuse any procedural default of his other claims. Because the Court rejected Petitioner's underlying claims on the merits, Petitioner's appellate counsel was not ineffective for failing to raise them on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986).

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing

threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

The Court concludes that a certificate of appealability is not warranted; reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will, however, grant Petitioner permission to appeal *in forma pauperis*; an appeal would not be frivolous.

**V. Conclusion**

The Court orders: (1) The petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**; (2) A certificate of appealability is **DENIED**; and (3) Permission to appeal *in forma pauperis* is **GRANTED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 29, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record and Jeffrey Gorecki by electronic means or U.S. Mail on July 29, 2015.

S/Carol A. Pinegar
Deputy Clerk